UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEREK P.,

                                Plaintiff,

              v.

FRANK BISIGNANO,[1] Commissioner of
  Social Security,

                        Defendant.

_____

**DECISION**
**and**
**ORDER**

**22-CV-653F**
(**consent**)

APPEARANCES:        HILLER, COMERFORD INJURY & DISABILITY LAW PLLC
                           Attorneys for Plaintiff
                           JUSTIN M. GOLDSTEIN, and
                           IDA M. COMERFORD, of Counsel
                           6000 North Bailey Avenue
                           Suite 1A
                           Amherst, New York  14226

                           MICHAEL DiGIACOMO
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York  14202
                                  and
                           JASON PARKERSON PECK
                           Special Assistant United States Attorneys, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           6401 Security Boulevard
                           Baltimore, Maryland  21235

## <u>JURISDICTION</u>

On May 19, 2025, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 15).  The matter is presently before the

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

court on motions for judgment on the pleadings filed by Plaintiff on February 12, 2023 (Dkt. 10), and by Defendant on April 13, 2023 (Dkt. 11).

## BACKGROUND

Plaintiff Derek P. ("Plaintiff"), brings this action seeking judicial review of the Commissioner of Social Security's final decision regarding Plaintiff's applications filed with the Social Security Administration ("SSA"), on April 4, 2014, and April 18, 2014, for, respectively, Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits") ("applications"), granting Plaintiff a closed period of benefits.[2]  Plaintiff alleges he became disabled on April 4, 2013, based on bipolar disorder, anxiety, major depression, post-traumatic stress disorder ("PTSD"), learning processing disability, attention deficit/hyperactivity disorder ("ADHD"), and asthma.  AR[3] at 159, 178, 189, 193, 200.

Plaintiff's applications initially were denied on July 9, 2014, AR at 68-93, and at Plaintiff's timely request, AR at 94, on August 22, 2016, a hearing was held before administrative law judge ("ALJ") Rosanne M. Dummer ("ALJ Dummer").  AR at 34-67 ("first hearing").  Following the first hearing, on September 19, 2016, ALJ Drummer obtained from impartial mental health medical expert Elizabeth Kalb, Ph.D. ("Dr. Kalb"), a completed Medical Interrogatory – Mental Impairment(s) – Adult report regarding

---

[2] The court notes that, as stated below, prior to filing this action, Plaintiff commenced two earlier actions in this court challenging unfavorable administrative decisions issued with regard to the same applications.

[3] References to "AR" are to the Bates-stamped page number of the Administrative Record Defendant electronically filed in two parts on December 13, 2022 (Dkts. 8 and 9).

Plaintiff's mental impairments based on review of Plaintiff's medical records (Dr. Kalb's Opinion").  AR at 941-52.  On October 7, 2016, ALJ Dummer denied Plaintiff's claims, AR at 14-33 ("First ALJ Decision"), which was upheld upon review by the Appeals Council on July 5, 2017, AR at 1-6, thereby making the first ALJ decision the Commissioner's final determination on the claim at that time.

On September 1, 2017, Plaintiff commenced an action in this court challenging the First ALJ Decision, *Purpura v. Berryhill*, No. 17-CV-00864-WMS (W.D.N.Y.) ("first civil action"), and on February 22, 2018, the matter, pursuant to a stipulation between the parties, *Purpura*, 17-CV-00864-WMS (W.D.N.Y. Feb. 22, 2018) (Dkt. 10); AR at 1011, was remanded to the Commissioner for further administrative proceedings.  Upon remand to the Commissioner, on May 10, 2018, the Appeals Council issued an order vacating the First ALJ Decision and directing the ALJ to (1) "give further consideration to the medical opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain," (2) "evaluate the claimant's medical impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a," (3) "give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record," and (4) if warranted, "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base."  AR at 1015-1016.  On remand from the Appeals Council, the matter was assigned to ALJ William Weir ("ALJ Weir" or "the ALJ") before whom, on July 19, 2019, a second administrative hearing was held ("second hearing").  AR at 979-1010.

On August 30, 2019, ALJ Weir issued an unfavorable decision ("Second ALJ Decision"), AR at 953-78, denying the applications. The ALJ's residual functional capacity ("RFC") formulated for the second ALJ decision included, *inter alia*, that Plaintiff, based on his non-exertional mental impairments, was limited to simple, 1 to 2 step tasks, and could have no contact with the public and only incidental contact with co-workers, and occasional supervisory contact. AR at 962. In formulating Plaintiff's RFC, ALJ gave "great weight" to Dr. Kalb's Opinion rendered on September 19, 2016 in the form of answers to interrogatories. AR at 923-52. According to Dr. Kalb, Plaintiff should work in a "low stress work environment plus avoid loud noises, people speaking loudly, people being too demanding," while at the same time that Plaintiff "needs to work around other people and stay busy." AR at 951. Plaintiff challenged the Second ALJ Decision in another action commenced in this court on December 27, 2019, *Purpura v. Comm'r of Soc. Sec.*, 19-CV-1717-FPG (W.D.N.Y. Dec. 27, 2019) ("second civil action"). Cross-motions for judgment on the pleadings in the second civil action were filed on June 26, 2020 (Plaintiff) and August 19, 2020 (Defendant). In a Decision and Order issued by District Judge Frank P. Geraci, Jr. on October 16, 2020, judgment on the pleadings was granted in favor of Plaintiff and denied as to Defendant, and the matter was remanded to the Commissioner for further proceedings. *Purpura v. Comm'r of Soc. Sec.*, 2020 WL 6128038 (W.D.N.Y. Oct. 19, 2020); AR at 1460-70 ("October 16, 2020 D&O). The Commissioner was directed to adequately explain how the RFC formulated by ALJ Weir was consistent with Dr. Kalb's opinion regarding Plaintiff's need to avoid noises and loud people while at the same time needed to be around people and stay busy, as well as to make specific findings regarding Plaintiff's need for a low

stress environment.  *Purpura*, 2020 WL 6128038, at * 2; AR at 1463.  Upon remand to the Commissioner, on November 2, 2020, the Appeals Council issued an order vacating the Second ALJ Decision and directing the ALJ to conduct further proceedings in accordance with the court's October 19, 2020 D&O.  AR at 1471-74.

On October 8, 2021, a third administrative hearing was held via telephone conference before ALJ Wier, located in Buffalo, New York ("third hearing").  AR at 1398-1433.  Appearing and testifying at the third hearing via telephone were Plaintiff, represented by Nicholas DiVirgilio, Esq., as well as medical expert psychiatrist Chukwuemeka Efobi, MD ("Dr. Efobi"), and VE Marian Marracco ("the VE").  On May 2, 2022, the ALJ issued a decision ("Third ALJ Decision") that was partially favorable insofar as the applications were granted for a closed period from April 4, 2013 through December 31, 2016, but determining  that as of January 1, 2017, Plaintiff "has been capable of making a successful adjustment to work that exists in significant numbers in the national economy."  AR at 1388.  This action followed on August 30, 2022.

On February 12, 2023, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiffs' Motion"), attaching Plaintiff's Memorandum of Law in Support of a Motion for Judgment on the Administrative Record (Dkt. 10-1) ("Plaintiff's Memorandum").  On April 13, 2023, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Mr. Purpura's Brief Pursuant to Local Rule 5.5 (Dkt. 11-1) ("Defendant's Memorandum").  Filed on May 2, 2023 was Plaintiff's Reply Brief (Dkt. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[4]

Plaintiff Derek P. ("Plaintiff"), born February 4, 1989, was 24 years old as of his alleged disability onset date ("DOD") of April 4, 2013, and 33 years old as of May 2, 2022, the date of the Third ALJ Decision. AR at 159, 178, 189, 1389. Plaintiff attended school in regular classes and did not graduate nor complete any type of specialized job training or vocational school, but obtained a GED in 2006, and briefly attended college. AR at 193. Plaintiff's work history includes as an attendant at a gas station, cashier, telemarketer, and as a youth advocate in a mental health association. AR at 194, 1428.

It is undisputed that Plaintiff has long suffered from several mental health impairments including anxiety, depression, and PTSD, much of which Plaintiff attributes to being abused by his father as a child from ages 3 to 5. According to Plaintiff, when working at his various jobs, he has to deal with such stressors as repetitive actions, boredom, and rude customers, but when it was less busy at work, his mind would wander to the abuse he experienced as a child which would bring on panic attacks. AR at 1411, 1419-23. When Plaintiff experiences a panic attack at work, he often has to take anti-anxiety medication, including Klonopin, which has a sedative effect rendering Plaintiff unable to work. *Id*. at 1419-21. Plaintiff maintains that he experiences panic attacks once a month when not working, but weekly when working. *Id*. at 1420-21. Plaintiff further maintains that his mental health symptoms fluctuate and are worse in

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

the springtime which is the season during which he suffered abuse by his father.  AR at 1425.

Plaintiff sought treatment on an emergency basis for anxiety and panic attacks on October 8, 2013, AR at 297, January 5, 2014, *id*. at 949, April 28, 2014, *id*. at 844-57, and November 30, 2015, *id*. at 911-22.  Plaintiff twice was involuntarily hospitalized for in-patient treatment of his mental health impairments including from December 5, 2015 to December 9, 2015 at Niagara Falls Memorial Health Center, following a panic attack, and from July 16, 2016 to July 18, 2016, for suicidal ideation.  AR at 384-755.

Plaintiff reported that he received mental health treatment from "Jeff" at an outpatient clinic at State University of New York at Buffalo ("SUNY Buffalo"), but left after two years when Jeff transferred to another practice.[5]  AR at 264.  On July 9, 2013, Plaintiff commenced outpatient mental health treatment with Licensed Mental Health Counselor ("LMHC") Kerry Collins ("LMHC Collins") at Niagara County Department of Mental Health ("NCDMH").  AR at 264-321, 1149-53.  On December 14, 2015, Plaintiff commenced outpatient treatment for his mental health with Horizon Health Services ("HHS"), where he saw psychiatrist Mark Varallo, M.D. ("Dr. Varallo"), LMHC Chelsea Plescia ("LMHC Plescia"), and Nurse Practitioners ("NP") Brenna Fox ("NP Fox"), Chelsea Kendra ("NP Kendra"), Kimberly Offhaus ("NP Offhaus"), Danielle Simmons ("NP Simmons"), and Samantha Snell ("NP Snell").  AR at 322-56, 378-83, 756-76, 1219-1322, 1345-58, 1823-74, 1986-2001.  On August 2, 2016, Dr. Varallo completed a mental residual functional capacity questionnaire ("Dr. Varallo's Opinion").  AR at 378-83.  Dr. Kalb's Opinon was issued on September 19, 2016.  AR at 941-52.  On April 29,

---

[5] There are no medical records in the Administrative Record pertaining to Plaintiff's treatment with Jeff at the SUNY Buffalo outpatient clinic.

2021, LMHC Plescia and NP Fox together completed a Mental Source Statement

Regarding Mental Health ("Plescia and Fox Opinion").  AR at 1825-30.  During the third

hearing Dr. Efobi, who was retained by the ALJ as an impartial medical expert, provided

an opinion based on Dr. Efobi's review of Plaintiff's medical records.  See AR at 1405-

18 ("Dr. Efobi's Opinion").


### DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d

Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original). Indeed, the issue therefore is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving DIB and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  The five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity, 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting his mental or physical ability to

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal a listing in 20 C.F.R. Part 404, Subpt. P, Appendix 1 of the regulations, and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite his collective impairments, retains the "residual functional capacity ("RFC") to perform his past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform his PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the insured status requirements for DIB through December 31, 2020, AR at 1369, despite some sporadic part-time employment, Plaintiff has not engaged in SGA since April 4, 2103, his alleged disability onset date ("DOD"), *id*. at 1369-70, and has the severe impairments of PTSD, generalized anxiety disorder, affective disorder, and borderline personality disorder, *id*., but that Plaintiff's obesity, attention deficit/hyperactivity disorder and learning disorder do not cause more than a minimal limitation in Plaintiff's ability to perform basic physical and mental work activities and, thus, are non-severe, AR at 1370-71, despite some indications that Plaintiff was noted to have asthma, the medical records showed Plaintiff

with clear lungs, and Plaintiff does not have an impairment or combination of impairments meeting or medically equal in severity to a listed impairment. AR at 1371-72. The ALJ further found that from April 4, 2013 through December 31, 2016, Plaintiff retained the RFC for a full range of work at all exertional levels, but with nonexertional limitations including performing simple and repetitive one- and two-step tasks, Plaintiff cannot perform complex work defined as work involving multiple, simultaneous goals or objectives or the need to independently set quality, quantity, or methods standards; Plaintiff can tolerate up to one change per day in general work task or setting, can have no more than occasional contact with coworkers, supervisors or the general public but supervisory contact could expand to frequent during a 30-day orientation or training period, and Plaintiff would be absent four times per month. AR at 1372-79. For the period April 4, 2013 through December 31, 2016, Plaintiff was unable to perform any PRW, and despite being classified as a younger individual based on his age, high school education, and RFC, and given Plaintiff's acquired job skills were not transferrable to other occupations, there were no jobs within the national economy that Plaintiff could have performed because Plaintiff's non-exertional limitations rendered Plaintiff unable to make a successful vocational adjustment to any work within the national economy such that Plaintiff was disabled from April 4, 2013 through December 31, 2016. AR at 1379-81.

Beginning January 1, 2017, however, the ALJ found that Plaintiff no longer had an impairment or combination of impairments meeting or medically equal to the severity of a listed impairment, AR at 1381-82, medical improvement occurred as of January 1, 2017, *id*. at 1382-83, resulting in an increase to Plaintiff's RFC. *Id*. at 1383. In

particular, as of January 1, 2017, Plaintiff retained the RFC to perform a full range of work at all exertional levels but with nonexertional limitations including performing simple and repetitive one- and two-step tasks, no complex work defined as work involving multiple, simultaneous goals or objectives or the need to independently set quality, quantity, or methods standards; Plaintiff can tolerate up to one change per day in general work task or setting, and can have no more than occasional contact with coworkers, supervisors, or the general public except supervisory contact may expand to frequent during a 30-day orientation or training period.[7]  AR at 1383-87.  Plaintiff was unable to perform any PRW, *id*. at 1387, his age category and education levels were unchanged from the previous RFC, *id*., and transferability of job skills was not material, *id*. at 1388, but as of January 1, 2017, Plaintiff was capable of performing work existing within the national economy including as a cafeteria attendant and dispatcher-router. *Id*. at 1388.  Accordingly, the ALJ concluded that Plaintiff was disabled from April 4, 2013 through December 31, 2016 ("the earlier period"), but after December 31, 2016, *i.e.*, beginning January 1, 2017 ("the later period"), Plaintiff's mental health improved along with his RFC such that Plaintiff was then no longer disabled.  *Id*. at 1388-89.

    In support of his motion, Plaintiff argues that the ALJ's RFC determinations both prior to and after December 31, 2016, are not supported by substantial evidence and are inconsistent with the remand orders insofar as the Administrative Record contains no evidence supporting the ALJ's determinations that as of December 31, 2016, an arbitrarily chosen date that coincides with the ALJ's misconception that such date was

---

[7] The court notes the only significant difference between Plaintiff's earlier RFC, *i.e.*, applicable to the period April 4, 2013 though December 31, 2016, and his RFC after January 1, 2017 is that Plaintiff no longer was expected to be absent from work four times a month.

also Plaintiff's date last insured ("DLI") for purposes of DIB,[8] Plaintiff was no longer

disabled, Plaintiff's Memorandum at 10-16, or that after December 31, 2016, Plaintiff's

symptomology was less severe such that Plaintiff's would no longer be absent from

work four days per month. *Id*. at 17-27.  Plaintiff further maintains that despite finding

Dr. Kalb's Opinion regarding Plaintiff's stress limitations consistent with the overall

record and affording the opinion "great weight" in the Second ALJ Decision, in the Third

ALJ Decision the ALJ improperly afforded Dr. Kalb's Opinion only "partial weight" and

rejected Dr. Kalb's assessment of Plaintiff's stress limitations.  *Id*. at 27-30.  In

opposition to Plaintiff's Motion and in support of Defendant's Motion, Defendant argues

the ALJ fully complied with the court's remand order by explaining how the RFC

incorporated Plaintiff's need for a low-stress environment or need to work around others

by limiting Plaintiff to only brief and superficial contact with others, Defendant's

Memorandum at 4-5, in formulating Plaintiff's RFC in the Third ALJ Decision the ALJ

properly gave Dr. Kalb's Opinion only partial weight because the opinion was then stale

in light of Plaintiff's symptomology improvement beginning January 1, 2017, *id*. at 5, the

choice of December 31, 2016 as the date for the termination of Plaintiff's disability was

not arbitrary nor based on any misconception about Plaintiff's last date insured, *id*. at 5-

8, and the Administrative Record contains substantial evidence supporting the

determination that as of January 1, 2017, Plaintiff was responding better to his mental

---

[8]  A disability benefits claimant's "date-last-insured" or "DLI" pertains only to claims for DIB under Title II of the Act which are determined based on an applicant's employment record, 42 U.S.C. § 423(a)(1)(A) and (c) (defining "fully insured individual" for purposes of DIB), as compared to claims for SSI under Title XVI of the Act which are not dependent on Plaintiff's employment record.  *See Surya H. v. Comm'r of Soc. Sec.*, 2023 WL 1864290, at * 3 (W.D.N.Y. Feb. 9, 2023) ("'The relevant period for [a] Title II claim spans between the . . . alleged onset date to the date last insured . . ., while the relevant period of consideration for [a] Title XVI application . . . extend[s] . . . to the date of the ALJ's decision.'" (quoting *Jaquish v. Comm'r of Soc. Sec.*, 2017 WL 3917019, *6 (N.D.N.Y. 2017))).

health treatment such that his symptomology improved and Plaintiff was no longer disabled.  *Id*. at 8-15.  In reply, Plaintiff argues the ALJ erred by failing to comply with the directions of this court and the Appeals Council on remand.  Plaintiff's Reply at 1-5, and by finding improvement as of December 31, 2016, based only on a misconception that such date was Plaintiff's last date insured for DIB.  *Id*. at 5-10.  There is no merit to Plaintiff's arguments.

Preliminarily, the court addresses Plaintiff's argument that the ALJ arbitrarily chose December 31, 2016, as the termination date for the closed period of disability benefits because that is the date the ALJ incorrectly believed was Plaintiff's date last insured for DIB.  This argument is without merit for three reasons.  First, a plain reading of the transcript from the third hearing on October 8, 2021, establishes that it was Dr. Efobi, rather than the ALJ, who identified December 31, 2016 as the closed period's end date.  *See* AR at 1405 (Dr. Efobi's testimony at the third hearing that, "I [Dr. Efobi] split the timeline in two.  The initial one was 2013 to 2016.  And 2017 to date.  I believe that will help * * * because I found the earlier period was more severe than the later period.").  Although there is some discussion previous to this testimony by Dr. Efobi regarding Plaintiff's DLI, which was misstated, that discussion was limited only to the fact that Plaintiff had to establish disability prior to his DLI for disability benefits under Title II, *i.e.*, DIB.  The ALJ specifically stated

> There are a couple of different periods that we're looking at.  We have a date last insured through the end of 2016.  So for Title II purposes, we're looking at April of '13 to December of '16.  And then for Title II -- -- Title XVI purposes we're looking at 2013 to date.

AR at 1405.

A plain interpretation of this dialogue establishes the ALJ was merely clarifying that Plaintiff had to establish disability prior to December 31, 2016 for purposes of DIB under Title II, but that there was no similar restriction for SSI under Title XVI other than establishing disability prior to the Third ALJ Decision.  Significantly, nothing within this discussion indicates the ALJ proposed that December 31, 2016 would be a preferred end date for terminating benefits for a closed period.

Second, at the beginning of the third hearing, Plaintiff, Plaintiff's attorney, and the ALJ discussed that Plaintiff had additional earnings through the fourth quarter of 2020, AR at 1402-03, and later that Plaintiff had further additional earnings making Plaintiff's DLI June 30, 2022.  AR at 1418-19.   Although in the Third ALJ Decision, the ALJ found Plaintiff's DLI was December 31, 2020, AR at 1369, Plaintiff's DLI played no role in the ALJ's determination of Plaintiff's closed period of disability and, thus, any reference by the ALJ to an incorrect DLI was harmless.

Third, the ALJ's acceptance of December 31, 2016 as the end date for the closed period is based not on a misunderstanding that that was Plaintiff's DLI, but on Dr. Efobi's opinion given at the third hearing that the Administrative Record contains evidence establishing that Plaintiff's mental health impairments sufficiently improved such that Plaintiff was no longer disabled after December 31, 2016.  AR at 1404-18.  In particular, Dr. Efobi explains that based on his review of Plaintiff's medical records, Dr. Efobi concurred with the diagnoses that Plaintiff has major depressive disorder, generalized anxiety and panic disorder, borderline personality disorder, and PTSD.  AR at 1405-06.  Dr. Efobi considered each of the four domains of mental functioning for disability based on Plaintiff's diagnosed mental impairments, commonly referred to as

the "paragraph B criteria." AR at 1406. Dr. Efobi found that for the period April 4, 2013 through December 31, 2016 ("the earlier period"), Plaintiff was mildly to moderately limited as the first functional domain pertaining to understanding, remembering, or applying information, *id*., moderately limited in the second functional domain of interacting with others, and the third functional domain of concentrating, persisting, or maintaining pace, *id*., and mildly limited in the fourth functional domain of adapting or managing himself. *Id*. Although Dr. Efobi's findings did not establish that Plaintiff was disabled based on the paragraph B criteria,[9] Dr. Efobi explained that the so-called "paragraph C criteria"[10] were met for the earlier period, prior to January 1, 2017, when Plaintiff's symptoms were more severe based on their frequency and persistence which made it more difficult for Plaintiff to interact with others and such that Plaintiff was unable "to hold it together," resulting in Plaintiff having panic attacks for which he sometimes sought treatment at a local emergency room and was out of work more often. *Id*. at 1406-07, 1415-16. In contrast, Dr. Efobi found that after December 31, 2016, the record established that although Plaintiff's diagnoses remained the same, Plaintiff's symptoms were less severe with fewer panic attacks and less anxiety, which Dr. Efobi attributed to Plaintiff responding better to treatment with most of his mental status exams then largely within normal limits. AR at 1407-09. According to Dr. Efobi,

---

[9] "To satisfy the paragraph B criteria, the claimant's mental disorder must result in an 'extreme' limitation of one, or a 'marked' limitation of two, of the four areas of mental functioning." *Rebecca B. v. Dudek*, 2025 WL 683621, at *5 (W.D.N.Y. Mar. 4, 2025) (citing 20 C.F.R. Subpt. P, App. 1, § 12.05A2b)).

[10] The paragraph C criteria are met where there is a medically documented history of a mental impairment for at least two years with evidence of both "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting," and "marginal adjustment" such that the claimant has a minimal ability to adapt to environmental changes or demands that are not part of his daily life. 20 C.F.R. Pt. 404. Subpt. P, App. 1, §§ 12.04, 12.06, 12.15.

based on his improved symptomology for the later period, *i.e.*, after December 31, 2016, Plaintiff was "more functional" and "more stable," and thus "should be able to do simple work with occasional interactions with others . . . ." AR at 1407. Dr. Efobi stated that Plaintiff's "depression was under better control and he had better coping skills. He got to the point where he was taking just the medications for - - for the night meds, which was under fair control." AR at 1409. The ALJ determined these findings by Dr. Efobi are supported with substantial evidence in the record establishing that as of January 1, 2017, Plaintiff's medical records showed Plaintiff's symptomology was improving based on Plaintiff's medications and coping skills.

For example, a February 7, 2017, Mental Status Exam report completed by Dr. Varallo was largely within normal limits as to Plaintiff's appearance in relation to age, body build, hygiene and grooming, eye contact, and attitude despite rigid posture, psychomotor agitation, irritable mood, and labile affect, speech was rapid and loud but quantity and quality were normal, Plaintiff was oriented as to person, place, and time, thought content was appropriate, thought process was logical, Plaintiff was without visual or auditory hallucinations, and insight and judgment were fair. AR at 1244-45. Plaintiff's anxiety was reduced with Seroquel (anti-anxiety), and Plaintiff was encouraged to continue with his medications. *Id*. at 1246-48. A Mental Status Exam report completed by NP Kendra on April 26, 2017, was largely normal with Plaintiff showing no psychomotor agitation, Plaintiff had euthymic (stable and balanced) mood, mood congruent to affect, speech was normal as to rate, tone, quantity, and quality, Plaintiff was oriented as to all three spheres, thought content was appropriate and organized, thought process was logical and goal-directed, cognitive status was normal,

Plaintiff was without visual or auditory hallucinations, and insight and judgment were fair.  AR at 1251-52.  Plaintiff reported fewer nightmares and flashbacks with his medications with which Plaintiff was compliant, had no complaints, presented with a "bright affect," "[e]asily engaged in conversation with good eye contact," denied overt depressed mood, mood swings, or anxiety, and although spring was usually a difficult time of year, "this past year has been better than most."  AR at 1253.  Subsequent reports by HHS were similar with a few exceptions for some medication changes to help Plaintiff deal with increased stress attributed to a Child Protective Services complaint regarding Plaintiff's daughter which was dismissed as unfounded and the death of Plaintiff's grandmother.  *See* Exh. 18F (HHS office treatment notes from February 24, 2016 through April 4, 2019 (AR at 1219-1322), from July 31, 2019 through April 8, 2021 (AR 1831-1974), and from June 3, 2021 through August 30, 2021 (AR at 1986-2001).  On December 18, 2019, Plaintiff reported he had to reschedule some appointments to accommodate his work schedule, a new medication, Cymbalta, was helping with anxiety, and although Plaintiff had anxiety attacks about once a week, the episodes lasted 15 minutes and went away on their own.  AR at 1849.

Although on an August 16, 2016 Employment Questionnaire completed by Plaintiff's former employer indicates that Plaintiff was frequently absent from work and on one occasion Plaintiff had to go to the hospital for a panic attack, Plaintiff's work was otherwise satisfactory and Plaintiff had not trouble relating to co-workers or the public, dealing with work stress, following directions, or maintaining attention and concentration.  AR at 238-39.  Further, as the ALJ observed, the evidence in the record shows that after January 1, 2017, Plaintiff was not seeking emergency care for panic-

related symptoms as he had earlier, and Plaintiff reported he no longer called into work

sick because of his mental health symptoms supporting the ALJ's determination that

Plaintiff was no longer likely to have problems maintaining a work schedule because of

absenteeism.  AR at 1386 (referencing AR at 1422).  Plaintiff also testified that although

in the past he often had to take Klonopin for panic attacks including at least once a

week, the side effects of which rendered Plaintiff sleepy and unable to work, AR at

1419-21, Plaintiff was no longer having frequent panic attacks and, thus, took Klonopin

only once a month.  *Id*. at 1421-22.  In short, there substantial evidence in the record

supporting the ALJ's determination that as of January 1, 2017, Plaintiff was no longer

unable to work because of his mental impairments.

Plaintiff also argues the fact that although in the Second ALJ Decision, the ALJ

afforded Dr. Kalb's Opinion regarding Plaintiff's stress limitations "great weight" because

the opinion was consistent with the overall record, in the Third ALJ Decision the ALJ

improperly afforded Dr. Kalb's Opinion only "partial weight" and rejected Dr. Kalb's

assessment of Plaintiff's stress limitations thereby establishing the ALJ improperly

reweighed the evidence of record.  Plaintiff's Memorandum at 27-28; Plaintiff's Reply at

1-3.  In response, Defendant argues that because Dr. Kalb's Opinion was rendered on

September 19, 2016, the opinion was stale as of January 1, 2017.  Defendant's

Memorandum at 5.

Although "'the mere passage of time' is insufficient to render an opinion stale.'"

*Gina D. v. Comm'r of Soc. Sec.*, 2021 WL 1117023, at * 4 (W.D.N.Y. Mar. 24, 2021)

(quoting *Whitehurst v. Berryhill*, 2018 WL 3868721, at * 4 (W.D.N.Y. Aug. 14, 2018)),

nevertheless, "'a medical opinion may be stale if subsequent treatment notes indicate a

claimant's condition has [changed].'" *Id*. (quoting *Whitehurst*, 2018 WL 3868721, at * 4). Here, as discussed above, Discussion, *supra*, at 17-18, after December 31, 2016, which is also after Dr. Kalb's Opinion was rendered on September 19, 2016, Plaintiff's treatment notes from HHS regularly show Plaintiff with improved mental functioning despite his continued mental health diagnoses, which improvement is attributed to improved medications with which Plaintiff is compliant, and coping skills. Accordingly, Plaintiff's argument that the ALJ erred by according Dr. Kalb's Opinion only partial weight in the Third ALJ Decision, despite granting the same opinion great weight in the Second ALJ Decision provides no basis for remand.

Further, contrary to Plaintiff's argument, Plaintiff's Memorandum at 27-30, the ALJ did not fail to make an individualized stress assessment of Plaintiff's ability to work or fail to include in the RFC determination Dr. Kalb's limitations regarding Plaintiff's need to work in a "low stress work environment plus avoid loud noises, people speaking loudly, people being too demanding," while at the same time Plaintiff "needs to work around other people and to stay busy." (citing AR at 949, 951). A plain reading of the Third ALJ Decision establishes the ALJ exhaustively explained that despite the seeming inconsistencies between Plaintiff's need for a low stress environment and to avoid loud noises and loud and demanding people, while at the same time needing to stay busy while working around others, Plaintiff himself reported that although demanding work caused him stress, his mind would wander the most and he would be bothered by intrusive thoughts particularly when there was little work to be done. AR at 1383. *See also* AR at 1423-24 (Plaintiff's testimony at the third hearing explaining that Plaintiff's mind is most likely to wander resulting in increasing anxiety when he is "not fully

engaged in something," or "just basic cleaning around the house"). Thus, by limiting Plaintiff to simple work with minimal contact with other people, the ALJ adequately incorporated Plaintiff's need for a low-stress environment with Plaintiff's need for Plaintiff to keep busy and be around other people consistent with Dr. Kalb's Opinion.

This same evidence establishes that the ALJ did not violate the so-called "treating physician's rule" by crediting Dr. Efobi's Opinion over those of treating psychiatrist Dr. Varallo or his staff. Under the "treating physician rule," for disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted). Nevertheless, "[t]he ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other substantial evidence in the record." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2002).

As relevant, on August 2, 2016, Dr. Varallo reported that for seven months he treated Plaintiff whom he saw weekly for counseling and as needed for medication management. AR at 379. Dr. Varallo diagnosed Plaintiff with generalized anxiety disorder, PTSD, unspecified anxiety disorder, and unspecified depressive disorder, and

reported Plaintiff is "fidgety and restless," and at time had flat affect or was "intense." *Id*.

Dr. Varallo checked boxes indicating Plaintiff exhibited 27 of 56 separately listed signs

and symptoms which affected Plaintiff's ability to make occupational adjustments.  AR

at 380-81.  In particular, Dr. Varallo indicated Plaintiff's ability was "good" for following

work rules and interacting with a supervisor, "fair" for relating to co-workers, dealing with

the public, and using judgment, "fair" to "poor" for maintaining attention and

concentration, and "poor" for functioning independently.  *Id*. at 381.  Dr. Varallo

explained that Plaintiff cannot work in an environment with loud noises or people who

argue or are demanding.  *Id*.  According to Dr. Varallo, Plaintiff reported that he cannot

work alone without experiencing excessive anxiety which increased his potential for

panic attacks, which would require Plaintiff to remove himself from the work

environment.  *Id*.  Dr. Varallo assessed Plaintiff's ability to make performance

adjustments as "fair," and social adjustments as "poor" to "none."  *Id*. at 382.  Although

Plaintiff was able to work in a setting with other people in the same general area,

Plaintiff's ability to function would significantly decrease upon returning to full-time

employment with his ability to perform work tasks dependent on Plaintiff's level of

anxiety.  *Id*.  Based on his impairments, Plaintiff was likely to miss more than four days

of work per month.  *Id*. at 383.  Dr. Varallo concluded that his opinion was based on

Plaintiff's responses to treatment.  *Id*.  Similar findings were reported by LMHC Plescia

and RN Fox, on April 29, 2021.  AR at 1825-30.  As discussed above, however,

Discussion, *supra*, at 16-19, substantial evidence in the record supports the ALJ's

determination that as of December 31, 2016, Plaintiff's compliance with his medication

and coping skills improved to where the severity of Plaintiff's mental health symptoms

no longer rendered Plaintiff unable to work.  Accordingly, the ALJ did not violate the treating physician's rule by failing to give controlling weight to Dr. Varallo's Opinion.

To summarize, in the instant case, the record establishes that substantial evidence supports the Third ALJ Decision that Plaintiff could, as of January 1, 2017, perform a limited range of work in all exertional categories and was no longer disabled under the Act.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    September 9, 2025
              Buffalo, New York

23